# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY CARISTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:18-cv-00976 |
| v. | ) | |
| | ) | |
| BLAIRSVILLE-SALTSBURG SCHOOL | ) | |
| DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Pending before the Court are two Motions to Dismiss Plaintiff's Complaint. (Mots., ECF Nos. 19, 21; Compl., ECF No. 1.) Defendants Michael Bartolini, Blairsville-Saltsburg School District (the "School District"), Linda Brown, Beverly Caranese, Holly Hall, and Marlene Joyce filed their collective Motion to Dismiss (ECF No. 19), and Defendant John Cambest filed his own Motion to Dismiss, ECF No. 21. For the reasons that follow, both Motions are granted.

## I. **Background**

This defamation case arises out of a public statement made by Plaintiff Tammy Caristo ("Plaintiff")[1] impugning the ethics and conduct of the Defendants and a press statement issued by the School District responding to Plaintiff, all of which related to Plaintiff's tenure as Superintendent of the School District.

Plaintiff was hired by the School District as Superintendent in 2010. (Compl. ¶ 7.) On December 7, 2016, the School District suspended Plaintiff without pay. (*Id.* ¶ 8.) Defendants

---

[1] Plaintiff was formerly known as Tammy Whitfield. (Compl. ¶ 1.)

Michael Bartolini, Linda Brown, Beverly Caranese, Holly Hall, and Marlene Joyce (collectively, "School Board Member Defendants") were five members of the School District's nine-member Board and had all voted in favor of the suspension.[2] (*Id.*)

Following that suspension, Plaintiff commenced a civil action (also in this Court) against the School District and the School Board Member Defendants alleging that she was retaliated against in violation of 42 U.S.C. § 1983, state whistleblower laws, and state contract law when she engaged in legally protected public speech concerning financial waste by the School District. (*Id.* ¶ 9.) That civil action settled via a written Settlement Agreement and Release, executed on November 22, 2017 ("Settlement Agreement"). (*Id.* ¶ 10.) Pursuant to the terms of the Settlement Agreement, Plaintiff received a monetary payment, she released School Board Member Defendants and the School District for liability for prior acts, and she resigned from her employment as Superintendent of the School District. (*Id.*)

Plaintiff gave a statement about the Settlement Agreement that made its way into newspaper articles published by TribLive and the Indiana Gazette. (*Id.* ¶¶ 41–42.) According to the Complaint, "Plaintiff's statement concerned false allegations, wrongdoing, misconduct, and financial waste by the [School] District and the School Board [Member] Defendants." (*Id.*)[3]

---

[2] Notably, although the later "Press Statement" (from which Plaintiff's claim arise) was made on behalf of the School District as a whole, Plaintiff has only sued those members of the School Board who had (previously) voted to suspend her back in December 2016.

[3] Plaintiff did not attach a copy of the Indiana Gazette news article containing extensive quotes from her own publicly released "statement" regarding the settlement. That article, and its verbatim recitation of Plaintiff's public statement was publicly known, including to the School Board, when it responded with its Press Statement, which Plaintiff did attach to her Complaint. (ECF No. 1-2). Further, in light of the fact that Plaintiff specifically cited to and relied on her own "statement" in her Complaint (Compl. ¶ 16), it is perfectly appropriate for the Court to consider it here under the long-standing principle that extrinsic matters become intrinsic when a plaintiff references them (but fails to attach them) as part of her claim. *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). The *Indiana Gazette* article, dated December 1, 2017, at issue is attached to this Opinion as Exhibit A.

The School District then released a written "Press Statement" via its public website, and Defendant John Cambest, Solicitor for the School District, read the Press Statement aloud at a school board meeting on December 6, 2017.[4] (*Id.* ¶¶ 4, 11.) The Press Statement states that its purpose is to "clear up the misstatements and fake news given to" the newspapers, presumably by Plaintiff. (Press Statement, ECF No. 1-2.) The Press Statement included the following statements, which Plaintiff alleges are "false and defamatory":

a) "Over the course of [Plaintiff's] superintendency, she refused to communicate with [School] Board Members and other Administrators on critical [School] District matters, engaged in unethical behavior involving investigations surrounding family members...."

b) "[I]t was discovered that [Plaintiff] had violated not only District Policy but also provisions of the Pennsylvania School Code...."

c) "[Plaintiff] chose not to participate in the Due Process Hearings to defend or explain her actions leaving the Board of School Directors no choice but to suspend her without pay...."

(*Id.* ¶ 13.) The Press Statement also lists allegations that were lodged against Plaintiff pending a Section 1080 Hearing[5] following her December 2016 suspension. (Press Statement, at 1.) In her Complaint, Plaintiff alleges that the allegations enumerated below are also "false and misleading" statements: (Compl. ¶ 13.)

---

[4] Plaintiff attached a copy of the School District's Press Statement to her Complaint as Exhibit A. (ECF No. 1-2.) It is also attached to this Opinion as Exhibit B.

[5] Referencing Section 1080 of the School Code of 1949, as amended. 24 P.S. § 10-1080 (West 2012).

d) "[Plaintiff] filed a lawsuit against a family without Board approval in violation of the Pennsylvania School Code."

e) "[Plaintiff] unilaterally transferred teachers without Board approval in violation of District Policy, the Teachers Contract and her own Contract. It was often reported to the Board that this was done as a form of control and retaliation/favoritism of professional teachers."

f) "[Plaintiff] participated in and conducted an investigation involving a family member on two (2) separate occasions. The actions of [Plaintiff] were unethical especially after being warned the first time in regard to a similar incident."

g) "It was discovered that student expulsion procedures were violated in accordance with the Pennsylvania School Code and District Policies."

h) "[Plaintiff] broke confidentiality of students and violated her own Contract by speaking out about internal investigations prior to their being accepted by the Board."

i) "The District lost two (2) students in a short period of time and as the District and community were coming together to mourn the Superintendent went to an education conference. It was later discovered that [Plaintiff] chose not to stay in the District but instead to attend the conference in an attempt to influence the person conducting a separation report of the Blairsville-Saltsburg School District. This was reported to the Board of School Directors by the individual conducting the separation report."

j) "[Plaintiff] conducted over ninety-five (95) Loudermill Disciplinary hearings in five (5) years. The Superintendent was given no authority to conduct any of these hearings. The Board received many complaints by staff and professional employees that [Plaintiff] used these Hearings to threaten jobs and flex her power within the District[.]

4

[O]ne case cost the District in excess of $200,000 in back pay and legal and arbitration fees."

k) "During her superintendency, [Plaintiff] failed to properly supervise the employees in her Administration and often took time off without notifying the Board or leaving proper Administrators in charge of the District."

l) "During her superintendency, [Plaintiff] unilaterally and without Board approval hired Professional Employees on incorrect salary steps in violation of District Policy with a financial liability to the District of Fifty Thousand ($50,000.00) Dollars."

m) "During her superintendency, [Plaintiff] allowed overtime pay to be withheld for certain employees. This had liability to the District of approximately Thirty Thousand ($30,000.00) Dollars."

n) "During her superintendency, [Plaintiff] allowed pay advancements for employees on leave that were not approved by the Board which required the District to recover funds of approximately Fifteen Thousand ($15,000.00) Dollars that were improperly spent. The District may have additional liability to the District that is unaware of."

(*Id.*)

Plaintiff alleges that all Defendants knew that these statements were false or made with reckless disregard for their falsity, and these statements were made "knowingly, willfully, and maliciously for the purpose of causing Plaintiff to suffer harm to her reputation, to hold her up for public ridicule, blacken her character, discredit her, and subject her to further harm and injury." (*Id.* ¶¶ 14–15.) The Press Release was later republished in print and online by various news outlets. (*Id.* ¶ 16.)

5

Plaintiff brings this lawsuit alleging that the publication of the "false and defamatory statements" via the Press Statement caused Plaintiff to suffer injury to her reputation and standing in the community, humiliation, public embarrassment and stigma, severe anxiety, distress, emotional pain and suffering, lost earnings and lost earning ability. (*Id.* ¶ 17.)

Count I of the Complaint asserts a claim for defamation (libel/slander), presumably under Pennsylvania common law, against the School Board Member Defendants and Mr. Cambest. (*Id.* ¶¶ 18–23.) Count II asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the Fourteenth Amendment against the School Board Member Defendants and Mr. Cambest. (*Id.* ¶¶ 24–30.) Count III asserts claim pursuant to 42 U.S.C. § 1983 for violation of the Fourteenth Amendment against the School District. (*Id.* ¶¶ 31–38.) Count IV asserts a claim pursuant to 42 U.S.C. § 1983 First Amendment retaliation against the School District. (*Id.* ¶¶ 39–46.) The filed Motions to Dismiss attack the validity of each claim asserted.

## II. **Legal Standard**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining upon whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the

6

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Our Court of Appeals has instructed that "a court reviewing the sufficiency of a complaint must take three steps," *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016), explaining:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 786–87. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A plaintiff must set forth "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of the claim for relief *Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 162 (3d Cir. 2017). *See also Connelly*, 809 F.3d at 789.

## III. Discussion

### A. Count I: State Law Claims for Defamation

Count I of the Complaint asserts a claim for defamation (libel/slander) under Pennsylvania common law against the School Board Member Defendants and Mr. Cambest (collectively, "Individual Defendants"). The Individual Defendants argue that they are immune from suit for state law defamation under Pennsylvania's doctrine of high public official immunity. As explained

below, the Court will apply such absolute immunity to each Individual Defendant, and Count I will be dismissed with prejudice.

"In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." *Doe v. Franklin County*, 174 A.3d 593, 603 (Pa. 2017). Thus, absolute immunity applies if (1) the individual is determined to be a high public official, and (2) the statements made or actions taken were in the course of the official's duty or power and within the scope of his authority. *Mollan v. Lindner*, 677 A.2d 1194, 1199 (Pa. 1996).

### 1. Raising high public official immunity at the motion to dismiss phase

Plaintiff initially challenges whether the Individual Defendants can raise this affirmative defense of immunity at this motion to dismiss stage, primarily relying on this Court's decision in *Ferrone v. Onorato*, 439 F. Supp. 2d 442, 455 (W.D. Pa. 2006). Plaintiff misconstrues *Ferrone*. Rather, it is well established that a defendant can succeed in claiming immunity from suit at the motion to dismiss phase "so long as there are sufficient facts for the court to complete the requisite analysis." *Mazza v. Tredyffrin Twp.*, No. 15-4245, 2016 U.S. Dist. LEXIS 6918, at \*4 (E.D. Pa. Jan. 21, 2016) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 293–94 (3d Cir. 2006)). In fact, the Supreme Court of the United States "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

It is true that not all immunity questions can be resolved at the motion to dismiss phase. Dismissal on the basis of immunity is not appropriate on a motion to dismiss when immunity is not established on the face of the Complaint. *Thomas*, 463 F.3d at 291. *See, e.g.*, *Webb v. Borough*,

8

No. 11-7834, 2012 U.S. Dist. LEXIS 102664, at *10 (E.D. Pa. July 24, 2012) (concluding it could not determine whether a police chief was a high public official for purposes of immunity on a motion to dismiss). That was the case in *Ferrone*, where this Court was unable to determine whether the defendants were entitled to application of Pennsylvania's doctrine of high public official immunity on the pleading; therefore, the Court denied the motion to dismiss without prejudice.[6] 439 F. Supp. 2d at 455. *Ferrone* certainly does not stand for a general prohibition on evaluating such an affirmative defense at the motion to dismiss phase.[7] *Accord Heller v. Fulare*, 454 F.3d 174, 180 (3d Cir. 2006) (concluding district court erred in denying motion to dismiss for immunity under Pennsylvania's doctrine of high public official immunity). Thus, it is appropriate for the Court to evaluate the arguments with respect to the affirmative defense of immunity here and now.

## 2. Whether the Individual Defendants are high public officials

In order to apply high public official immunity, the Court must first make the determination that each Individual Defendant in fact held a high public office. "[T]he determination of whether a particular public officer is protected by absolute privilege should depend upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Montgomery v. Philadelphia*, 140 A.2d 100, 105 (Pa. 1958). But discovery is not

---

[6] The two individual defendants in *Ferrone* held the positions of Chief Executive of Allegheny County and Director of the Department of Economic Development of Allegheny County. 439 F. Supp. 2d at 445.

[7] Plaintiff also cites to *Gilbert v. Feld*, 788 F. Supp. 854, 861 (E.D. Pa. 1992), for its statement that "unless plaintiff admits, in the complaint, that defendant is entitled to qualified immunity, such defense cannot be used to defeat the claim at this preliminary stage." Plaintiff takes this language too literally, as two sentences earlier the Court stated the standard: "[t]he defense of qualified immunity can support the grant of a Rule 12(b)(6) motion only when the complaint itself *establishes the circumstances required* for a finding of qualified immunity." *Id.* (emphasis added).

always necessary to make such a determination because courts have already recognized that certain positions constitute such a high office. *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 401 (E.D. Pa. 2011) (citing *Petula v. Mellody*, 631 A.2d 762 (Pa. Commw. Ct. 1993), and *Matta v. Burton*, 721 A.2d 1164, 1166 (Pa. Commw. Ct. 1998)). Here, the Court must determine whether Pennsylvania school board members and a school board solicitor fall into that category of high public officials or whether discovery is necessary to make such a determination.

### *i.    School Board Member Defendants*

At the motion to dismiss phase, district courts in this Circuit have split on the issue of whether school board members qualify as "high public officials." But a large majority of courts (including this Court) have concluding that they do, as school board members are entrusted with the policymaking role for a school district. *Zurchin v. Ambridge Area Sch. Dist.*, 300 F. Supp. 3d 681, 695 (W.D. Pa. 2018) (dismissing state claims against school board members in their official capacity on a motion to dismiss because it is "well-established" that school board members are high public officials entitled to absolute immunity);[8] *see also Warkevicz v. Berwick Area Sch. Dist.*, No. 15-cv-01922, 2016 U.S. Dist. LEXIS 91374, at \*28 (M.D. Pa. July 14, 2016) (same); *Markovich v. Panther Valley Sch. Dist.*, No. 13-cv-3096, 2014 U.S. Dist. LEXIS 102172, at \*25–26 (M.D. Pa. July 28, 2014) (same); *Kohn v. Sch. Dist.*, 817 F. Supp. 2d 487, 512 (M.D. Pa. 2011) ("There is no doubt that, as defined in the doctrine, the Elected School Board members are high public officials . . . ."); *Kern v. Schuylkill Intermediate Unit 29*, No. 08-cv-1601, 2010 U.S. Dist. LEXIS 3216, at \*22 (M.D. Pa. Jan. 15, 2010) ("School Board members . . . qualify as high public

---

[8] The *Zurchin* Court did not dismiss claims against the school board members in their individual capacities based on the second prong of the high public official immunity test because the complaint sufficiently alleged that some conduct alleged occurred outside the scope of their official duties in connection with school district business. *Zurchin*, 300 F. Supp. 3d at 695.

officials."); *Graham v. Avella Area Sch. Dist.*, No. 05-cv-1344, 2006 U.S. Dist. LEXIS 39258, at *13 (W.D. Pa. June 14, 2006) (same but denying motion to dismiss because actions were beyond official authority); *Wagner v. Tuscarora Sch. Dist.*, No. 04-cv-1133, 2005 U.S. Dist. LEXIS 45663, at *22 (M.D. Pa. Sep. 21, 2005) (concluding school board members are high public officials entitled to absolute immunity);[9] *Zugarek v. Southern Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002) (same).

Plaintiff directs the Court to *Ruder*, in which the district court concluded, on a motion to dismiss, that school board members did not qualify under the doctrine. 790 F. Supp. 2d at 401. *Ruder* appears to be the only case in this Circuit that takes this position with respect to school board members. Interestingly, *Ruder* extended absolute immunity to the president of the school board but not to the remaining members of the school board yet provided no explanation of the practical differences between those positions with respect to their duties or policy-making functions.[10] *Id.* One other case deferred its ruling on this immunity doctrine to allow the parties to develop a factual record. *Snook v. Midd-West Sch. Dist.*, No. 14-cv-948, 2015 U.S. Dist. LEXIS 32211, at *40 (M.D. Pa. Mar. 16, 2015) ("[I]nformation before this Court as to the scope of the

---

[9] The *Wagner* Court ultimately denied the motion to dismiss, concluding that "the defense of official immunity does not apply to any act by a high public official that constitutes a crime, actual fraud, actual malice or willful misconduct," citing 42 P.S. § 8550, but, of course, our Court of Appeals and the Pennsylvania Supreme Court have explicitly stated that the Pennsylvania Political Subdivision Tort Claims Act did not abrogate the high public official immunity doctrine. *Wagner*, 2005 U.S. Dist. LEXIS 45663, at *24; *Heller*, 454 F.3d at 178 n.2; *Lindner*, 677 A.2d at 1196 ("[O]ur courts have agreed that Section 8550 of the [Tort Claims Act] does not abrogate the common law doctrine of absolute privilege for high public officials.").

[10] Pursuant to the School Code, the only statutory duties of the President are the signing of official legal documents (such as checks and deeds) only after being authorized by the Board to do so and the calling of special meetings. 24 Pa. Stat. and Cons. Stat. Ann. § 4-426 (2019). Those duties have no relevance here.

School Board Officials' duties. . . . [is not] sufficient information to determine whether the individual defendants are entitled to high public official immunity.").[11]

A vast majority of cases, including the most recent case from this Court, have concluded on motions to dismiss that school board members are entitled to high public official immunity. This Court will follow that majority approach. A court determining whether a particular individual qualifies as a high public official looks to "the official's duties, the importance of her office, and whether she has policy-making functions." *Matta*, 721 A.2d at 1166. As Plaintiff's Complaint acknowledges, school board members have extensive and important duties, including voting on whether to terminate or suspend district superintendents. (Compl. ¶ 8); *see also* 24 P.S. § 10-1080 (requiring board of school directors to conduct a hearing, vote on removal of superintendents, and publicly disclose such removal). Of course, the duties of a school board director are much broader, ranging from the establishment and maintenance of elementary public schools, 24 P.S. § 5-501, to operating all food service programs, 24 P.S. § 5-504.1. The School Board even has the power to levy and collect taxes. 24 P.S. § 5-507. This is because Pennsylvania school board members are indeed "entrusted with the policymaking role for the School District," *Zugarek*, 214 F. Supp. 2d at 479, and they "routinely make[] significant public policy decisions." *Lindner*, 667 A.2d at 1199.

---

[11] For her argument that School Board Members Defendants are not high public officials, Plaintiff relies largely on cases addressing other positions within and outside the school system. *See Kobrick v. Stevens*, No. 13-cv-2865, 2014 U.S. Dist. LEXIS 137554, at *35 (M.D. Pa. Sep. 30, 2014) (concluding on motion to dismiss that teachers and principals do not qualify as high public officials); *Ferrone*, 439 F. Supp. 2d at 455 (concluding the record on motion to dismiss was not sufficiently developed to determine whether Chief Executive of Allegheny County and Director of the Department of Economic Development of Allegheny County were entitled to high public official immunity). Plaintiff cited to *Wagner* for its holding that teachers and principals do not qualify as high public officials, ignoring its holding that school board members do qualify. 2005 U.S. Dist. LEXIS 45663, at *24. The Court is also not persuaded by Plaintiff's citation to *Keeler v. Everett Area School District*, which does not reference or discuss the high public official doctrine. 533 A.2d 836, 837 (Pa. Commw. Ct. 1987).

12

Given these important duties and their policy-making functions, extending absolute immunity to the School Board Member Defendants promotes the doctrine's purpose of removing "any inhibition which might deprive the public of the best service of its officers and agencies[, e]ven through the innocent may sometimes suffer irreparable harm . . . ." *Id.* at 1196.[12] The School Board Member Defendants are entitled to absolute immunity from the state law claims in this case so long as they were acting in their official capacity as to the Press Statement.

### ii.    *Defendant Cambest*

Although there is less case law on whether a school district solicitor qualifies as a high public official for purposes of absolute immunity, the cases that have considered the issue have concluded that a solicitor does in fact qualify as a high public official for purposes of absolute immunity. In *Maynard v. Sugarloaf Township*, the district court concluded that a township solicitor was entitled to high public official immunity. No. 06-cv-00845, 2012 U.S. Dist. LEXIS 116845, at \*10 (M.D. Pa. Aug. 20, 2012). This conclusion was made at the summary judgment stage, but the *Maynard* court relied upon Pennsylvania legal authority rather than factual circumstances of that particular case to reach its conclusion, specifically *Alston v. PW-Phila. Weekly*, 980 A.2d 215, 218 & n.3 (Pa. Commw. Ct. 2009), where preliminary objections filed by the city solicitor on the basis that he was immune by virtue of his "high public official" status were granted. *See Osiris Enters. v. Borough of Whitehall*, No. GD 03-12928, 2004 WL 5050296 n.1 (Allegheny Cty. C.P.

---

[12] *Lindner* explains,

> [I]t has been found to be in the public interest and therefore sounder and wiser public policy to 'immunize' public officials, for to permit slander, or libel suits where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment-proof public officials from performing their official duties.

677 A.2d at 1196 (quoting *Matson v. Margiotti*, 88 A.2d 892, 899–900 (Pa. 1952)).

Sept. 22, 2004) (granting preliminary objections and concluding that defendants, including borough solicitor, were entitled to high public official immunity).

Other county attorneys have been recognized to have high public official immunity. In *Durham v. McElynn*, the Pennsylvania Supreme Court recognized the importance of extending absolute immunity to *assistant* district attorneys because while they may not have a strong policy-making function, "it is the public interest in seeing that the official not be impeded in the performance of important duties." 772 A.2d 68, 70 (Pa. 2001). The same rational applies to the attorney for school boards. Thus, the Court concludes that Pennsylvania law extends high public official immunity to school board solicitors so long as they are acting in their official capacity.

### 3. Whether the Individual Defendants' alleged statements were made in the course of their official duty or power and within the scope of their authority

The facts alleged in the Complaint plainly demonstrate that the Individual Defendants were acting within the scope of their official authority and in the course of their official duties. All alleged "statements" were made via a reading of the Press Statement during a school board meeting or via an official medium—the School District's public website. (*Id.* ¶¶ 4, 11.) *See Markovich*, 2014 U.S. Dist. LEXIS 102172, at *27 (statements made by school board official, even if disorderly and against the advice of the solicitor, at school board meeting and via blog posts all related to the school board position in which board members were conducting business, so absolute immunity applied). Any personal or political motive, presence of malice, or intent to do harm is immaterial for purposes of this absolute privilege. *Montgomery*, 140 A.2d at 101 n.1. Therefore, Plaintiff's argument that "the context and capacity in which [the School Board Member Defendants] undertook any of the underlying actions is unknowable" simply has no merit in light of the allegations of Plaintiff's own Complaint. (Br. in Opp'n, ECF No. 26, at 16.)

All of Plaintiff's public allegations went directly to the lawfulness of the official conduct of the School District and its School Board and relative to her conduct in her statutory role. The School District's Press Statement was likewise directed at the School District's and School Board's assessment of the conduct of these same operations and official duties. The matters in both Plaintiff's published statements and the School District's Press Statement were indisputably involving matters of public concern, and the School District's press statement was an official action directed by, as Plaintiff's pleads, a majority of the School Board.

All Individual Defendants are considered high public officials for purposes of the high public official immunity doctrine. Because all the alleged conduct occurred within the scope of the Individual Defendants' authority and was made in the course of their official duties, the Court concludes that the Individual Defendants are all cloaked with absolute immunity for the conduct alleged in the Complaint.[13] As such, Count I is dismissed with prejudice against all Individual Defendants.

---

[13] The Court concludes that the School Board Member Defendants have absolute immunity under the high public official immunity doctrine, so the Court need not analyze whether they also possess immunity under the Pennsylvania Subdivision Tort Claims Act, 42 Pa. C.S. § 8541.

### B. Count II: Section 1983 Fourteenth Amendment Against Individual Defendants

Plaintiff alleges that the Individual Defendants violated Plaintiff's Fourteenth Amendment rights by making defamatory statements, and she brings claims under 42 U.S.C. § 1983.[14] All Individual Defendants argue that Count II should be dismissed against each of them because the Complaint does not sufficiently allege a denial of a federally protected right, a key element to any § 1983 defamation claim. Further, Defendant Cambest argues that he is shielded from § 1983 liability under the doctrine of qualified immunity.

Plaintiff's Complaint alleges in conclusory fashion that her Fourteenth Amendment rights were violated because she was deprived of both liberty and property rights, "namely, Plaintiff's interest in her reputation and ability to obtain employment." (Compl. ¶ 29.) *See also* 42 U.S.C. § 1983. Plaintiff's Complaint generally refers to the "Fourteenth Amendment," but is otherwise unspecific as to the source of her claim.

#### 1. Procedural Due Process

In order to determine whether the Individual Defendants' actions, as alleged in the Complaint, deprived Plaintiff of procedural due process, the Court "must first ask whether the asserted individual interests are encompassed within the [F]ourteenth [A]mendment's protection of 'life, liberty, or property.'" *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (quoting *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984)). The asserted interests in

---

[14] "Rather than conferring any substantive rights, section 1983 'provides a method for vindicating federal rights elsewhere conferred.'" *Hildebrand v. Allegheny County*, 757 F.3d 99, 104 (3d Cir. 2014) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

this case are Plaintiff's reputation[15] and her ability to obtain employment.[16] While an individual has a protectable interest in their reputation, *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), "reputation alone is not an interest protected by the Due Process Clause." *Dee*, 549 F.3d at 233 (citing *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1993)). To show a violation of the procedural due process clause, Plaintiff must also show a deprivation of some additional right or interest. *Id.* at 233–34. Thus, the question becomes whether Plaintiff's alleged impaired (but at this point inchoate) ability to obtain employment is a sufficient "plus" deprivation to state a due process claim. It is not.

Our Court of Appeals analyzed this precise issue in *Randall v. Facebook, Inc.*, an unpublished opinion, where the plaintiff had asserted that a press release disseminated over social media about his prosecution for organized crime charges defamed him and limited his prospects for employment as a musician. 718 F. App'x 99, 100, 101 (3d Cir. 2017). Our Court of Appeals concluded that the plaintiff's claim was foreclosed by the United States Supreme Court's decision

---

[15] In order to show damage, or "stigma" to one's reputation, "it must be alleged that the purportedly stigmatizing statements(s) (1) were made publicly and (2) were false." *Dee*, 549 F.3d at 235. There is no dispute that the Press Statement constitutes a publicly made statement. Although Defendant Cambest disputes Plaintiff's characterization of statements in the Press Statement, he does not argue that Plaintiff has failed to plead falsity. However, the Court largely agrees with Defendant Cambest that most (but not all) of the allegedly false statements in the Press Statement are simply re-hashed allegations previously lodged against Plaintiff and not newly issued allegations. Plaintiff does not plead that the lodged allegations were never actually lodged, only that the underlying allegations are meritless. "[I]f her own exhibits contradict her allegations in the complaint, the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

[16] Plaintiff does not allege that the loss of her formerly held job as Superintendent of the School District is a deprivation of a liberty/property interest. Nor could she because the end of her employment occurred prior to when the allegedly defamatory statements (i.e. the Press Statement) were made. Rather, Plaintiff alleges that she has been deprived of "opportunities for obtaining employment in her chosen occupation as a school Superintendent." (Br. in Opp'n, ECF No. 26, at 8.)

17

in *Paul v. Davis*, 424 U.S. 693, 701 (1976), in which the Supreme Court "stated that a claim of defamation . . . was not a federal claim even if it would 'seriously impair [that person's] future employment opportunities.'" 718 F. App'x at 101 (quoting *Paul*, 424 U.S. at 697). Accordingly, the plaintiff's complaint failed to state a "stigma-plus" claim, and our Court of Appeals affirmed the dismissal of the complaint. *Id.* Similarly, in *King v. Deputy Attorney General of Delaware*, another unpublished opinion, our Court of Appeals noted that the plaintiff did not plead a cognizable federal defamation claim on the basis that a press release defamed him and limited his prospects for employment as a social worker. 616 F. App'x 491, 497 n.8 (3d Cir. 2015). The bottom line is that our Circuit simply has not recognized "allegations of 'possible loss of future employment opportunities' [or] even outright 'financial harm'" as viable "plus" deprivations to fulfill the "stigma-plus" test for a federal defamation claim. *Simpson v. Nicklas*, 500 F. App'x 185, 188 (3d Cir. 2012) (quoting first *Clark*, 890 F.2d at 620,[17] and quoting second *Sturm v. Clark,* 835 F.2d 1009, 1013 (3d Cir. 1987)); *see also Steffey v. Agora Cyber Charter Sch.*, No. 18-cv-1182,

_____

[17] Plaintiff asserts that *Clark* did not hold, as a general rule, that the possible loss of future employment opportunities is an insufficient "plus" deprivation. However, to quote *Clark*, "[t]he possible loss of future employment opportunities is patently insufficient to satisfy the requirement imposed by *Paul* that a liberty interest requires more than mere injury to reputation." *Clark*, 890 F.2d at 620. *Burns v. Alexander*, cited by Plaintiff, does not compel a different conclusion, as that opinion addressed state-issued licenses and clearances that are essential to pursuing an occupation. 776 F. Supp. 2d 57, 81 (W.D. Pa. 2011). Furthermore, the plaintiff in *Burns* demonstrated more than "negative implications" for future employment prospects, including "tangible injuries such as her temporary removal from [the child care center she ran], the decision not to renew her operating license, [the center's] suspension from the Keystone STARS program, and her loss of over $30,000.00 in grant money and tuition support." *Id.* at 83. Plaintiff also relies on an older case from our Court of Appeals that vacated a district court's grant of a motion to dismiss based on the pre-*Iqbal*/*Twombly* pleading standards where the plaintiff alleged that he was defamed in the course of being discharged, which is not the case here. *McKnight v. Se. Pa. Transp. Auth.*, 583 F.2d 1229, 1236 (3d Cir. 1978); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (where employer disseminates defamatory impression about employee in connection with termination, the defamation is the stigma and the termination is the plus). *See* note 16 *supra*. *Hill* does not apply in that way here, since the Press Statement came after Plaintiff's employment ended.

18

2018 U.S. Dist. LEXIS 214153, at *11 (E.D. Pa. Dec. 19, 2018) (plaintiff simply asserted "harm . . . to her future employment prospects" but failed to alleged specific injury to her future employment prospects).

The Court concludes that Plaintiff's Complaint fails to satisfy the "stigma-plus" test because statements that Plaintiff has suffered lost future employment opportunities, "lost earnings," and "suffered a permanent impairment of her ability to earn" are insufficient to satisfy the "plus" component of the "stigma-plus" test for a procedural due process claim.[18]

### 2. Substantive Due Process

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience."[19] *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). To show that Plaintiff's particular interest in future employment opportunities as a school superintendent is protected by the substantive due process clause, Plaintiff quotes *Burns*, where this Court noted that although our Court of Appeals has not clarified whether the liberty to pursue

---

[18] To be clear, an inquiry into the sufficiency of a due process claim such as the one brought by Plaintiff does not end with the "stigma-plus" test. "Once it is determined that the Due Process Clause is implicated by a specific deprivation of liberty or property, the relevant question becomes 'what process is due' under the particular circumstances." *Whittaker v. County of Lawrence*, 674 F. Supp. 2d 668, 694 (W.D. Pa. 2009) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Because Plaintiff's claim does not survive the "stigma-plus" test and the Individual Defendants did not address the second part of the procedural due process claim analysis, the Court need not address that part of the analysis at this time.

[19] Plaintiff's Complaint does not set forth allegations to support a claim for a violation of substantive due process, as it fails to plead allegations that the Individual Defendants' behavior(s) shocked the conscience. However, the Court will nevertheless address Plaintiff's argument in her brief that the pled liberty interest—the ability to obtain employment—"should be considered a deprivation of a liberty interest afforded substantive due process protection." (ECF No. 126, at 10.) Plaintiff did not argue that stigma to her reputation alone could constitute a deprivation of a liberty afforded substantive due process protection.

an occupation is sufficiently "fundamental" to qualify for substantive due process protection, this Court considered "the liberty to pursue a calling or occupation, unlike the right to a specific job, [to be] entitled to substantive due process protection." *Burns*, 776 F. Supp. 2d at 92. However, this is constrained by the reality that decreased business opportunities or a decreased ability to earn a living based on reputational injury alone is insufficient to state a substantive due process claim. *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006). Rather, a plaintiff must show an actual inability to pursue a chosen profession. *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 402 (W.D. Pa. 2012); *see also Hart v. W. Mifflin Area Sch. Dist.*, No. 16-cv-1066, 2016 U.S. Dist. LEXIS 169473, at *9 (W.D. Pa. Dec. 8, 2016) ("[T]o the extent Plaintiff claims that he has suffered loss of future employment as a result of the publication of these online statements, his allegations are insufficient, as he alleges (if anything) only a generalized threat of lost future employment opportunities.").[20] Just as the generalized allegations of potential lost future employment were insufficient to show a procedural due process violation, they are also insufficient to show a substantive due process violation.

Therefore, the Court will dismiss Count II against all Individual Defendants but without prejudice. The Court cannot conclude that amendment would necessarily be futile, but in light of the principles set out in *Randall* and *Hill*, it likely is. Plaintiff will be given one opportunity to amend to specifically set forth the precise type of actual harm suffered to fulfill the directions of

---

[20] The plaintiff in *Hart* filed an amended complaint in which he alleged that "he applied for four positions following his termination but was not hired due to the defamatory and stigmatizing accusations of theft and racism." *Hart v. W. Mifflin Area Sch. Dist.*, No. 16-cv-1066, 2017 U.S. Dist. LEXIS 52638, at *12 (W.D. Pa. Apr. 6, 2017). Upon review of the added allegations, this Court concluded that "[p]laintiff has done more than allege a generalized 'possible loss of future employment opportunities.'" *Id.* (citing *Simpson*, 500 Fed. Appx. at 188).

*Randall* and *Hill*, as her vague and generalized allegations to date fall woefully short of that mark.[21]

The Court defers its decision on Defendant Cambest's qualified immunity defense until Plaintiff

has amended her Complaint in a further effort to state a claim.

---

[21] If Plaintiff elects to amend, she must specify in her amended complaint whether Count II is intended to be brought under the Fourteenth Amendment's substantive due process doctrine, the procedural due process doctrine, or both, and provide a factual basis that makes such claim(s) plausible. Furthermore, Plaintiff must plead facts demonstrating the specific personal involvement of each Individual Defendant as to any Constitutional deprivations she alleges. Group pleading as to such matters will not suffice. *See Krebs v. New Kensington-Arnold Sch. Dist.*, No. 16-cv-610, 2016 U.S. Dist. LEXIS 159059, at *21–22 (W.D. Pa. Nov. 16, 2016) ("Without separately alleging the conduct of each Defendant, Defendants are not on notice of their conduct." (citing *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005)); *Best Med. Int'l, Inc. v. Accuray, Inc.*, No. 10-cv-1043, 2011 U.S. Dist. LEXIS 23571, at *16 (W.D. Pa. Mar. 9, 2011) (Plaintiff failed "to plead any facts which reflect the actual conduct in which any Individual Defendant engaged. Rather, the Amended Complaint contains only generic, conclusory references to all of the Individual Defendants as a group.").

## C. Count III: Section 1983 Fourteenth Amendment Against the School District

The School District argues that Plaintiff fails to state a claim for municipal liability based on the Individual Defendants' actions because the Complaint fails to allege the existence of any policy or custom allegedly violated. Plaintiff counters that the School Board Member Defendants' decision to issue the Press Statement "represents an act of official government policy," which is enough to place liability on the School District. (ECF No. 26, at 13.) Because the Court has dismissed the claims against the Individual Defendants, the identical claims against the School District must also be dismissed. *Hill*, 455 F.3d at 245. However, because Plaintiff will be given leave to amend her Fourteenth Amendment claims, the Court will reiterate the proper standard for a § 1983 claim against a municipality, which our Court of Appeals summarized in *Hill* in the context of claims related to reputation:

A municipality may not be held liable under § 1983 for the constitutional torts of its employees by virtue of *respondeat superior*. Rather, a municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice. *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978); *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred. *See generally Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–484 (1986); *McGreevy*, 413 F.3d at 367; *LaVerdure v. County of Montgomery*, 324 F.3d 123, 125–126 (3d Cir. 2003).

*Hill*, 455 F.3d at 245. Further, in order to state a claim under the number (2) referenced above, the Complaint must allege that specific actors were final policy-makers. *Id.* As pled, Count III is legally insufficient, and will be dismissed without prejudice, but with one opportunity to amend to

22

state a plausible claim. Should Plaintiff amend her claim against the School District, she must sufficiently allege facts plausibly showing at least one of the three circumstances identified above.[22]

### D. Count IV: Section 1983 First Amendment Retaliation Against the School District[23]

Plaintiff argues that the statement she gave and as relayed verbatim in newspaper articles after the Settlement Agreement related to matters of public concern and are protected under the First Amendment to the United States Constitution, and because the Press Statement was explicitly in response to Plaintiff's comments, the School District is liable for an act of retaliation for her exercise of her First Amendment right.

The parties agree that "[t]o plead retaliation for the exercise of First Amendment rights, a plaintiff must allege '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (quoting *Thomas*, 463 F.3d at 296). The parties also agree that that Plaintiff's status at the moment of the alleged retaliation was that of a private citizen, not a

---

[22] Plaintiff's pled statements under Count III, such as "[t]he District, acting through its agents and/or employees" (Compl. ¶ 34), are likely too conclusory to state a claim on the basis that "[a]n individual's conduct implements official policy or practice." *Hill*, 455 F.3d at 245. These are simply dressed-up *respondeat superior* allegations, and they do not make the cut under *Hill* or *Monell*.

[23] Plaintiff's commentary in her response brief that her adversaries' legal arguments are "nonsensical," constitute "feigned ignorance . . . border[ing] on the absurd," and "belie[] a fundamental misunderstanding of" legal principles are not helpful to the Court in its disposition of the pending Motions to Dismiss. Plaintiff's counsel is instructed to knock it off.

public employee. *See Conard v. Pa. State Police*, 902 F.3d 178, 182 (3d Cir. 2018) (after individual leaves public employment, public-employment first amendment framework does not apply).

The first element focuses on the conduct of the Plaintiff. The allegedly protected conduct pled here is Plaintiff's commentary about the School District to various news outlets.[24] The second element focuses on the conduct of the Defendant. Because the alleged retaliatory conduct by the School District is in the form of the School District's own speech (i.e. official speech), the Court must first determine whether this speech can amount to a retaliatory act before it can determine whether it could be sufficient to deter a person of ordinary firmness from exercising her constitutional rights. *Mirabella*, 853 F.3d at 651 (when alleged act of retaliation is official's own speech, "we employ a more specific test to determine whether the official's speech amounts to a retaliatory act").

Official speech will only constitute a retaliatory act if it is of a "particularly virulent character." *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001). This is because a public "official," here the School District speaking via its Board and Solicitor, has its own First Amendment right countervailing to that of the Plaintiff. *Conard*, 902 F.3d at 183; *see also Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 824 (3d Cir. 2009) (explaining that "other considerations are in play" when public official speaks on matters of public concern). Under this test, the Court "ask[s] whether there was 'a threat, coercion, or intimidation, intimating that

---

[24] The School District argues that because Plaintiff failed to identify the statement that she gave to news outlets, her Complaint fails to satisfy the first element. Plaintiff alleges that she gave a "statement concern[ing] false allegations, wrongdoing, misconduct, and financial waste by The District and the School Board Defendants." (Compl. ¶ 42.) When read together with the preceding paragraph, it is clear that this statement is the same December 1, 2017, statement referenced in the Press Statement. Therefore, the "constitutionally protected conduct" is properly identified.

24

punishment, sanction, or adverse regulatory action will follow.'" *Mirabella*, 853 F.3d at 651 (quoting *McLaughlin*, 271 F.3d at 573).[25]

But there is an exception. The "virulent character" test only applies if the case involves a matter of public concern. *Conard*, 902 F.3d at 183. When "the official's conduct relates only to a private matter such as the plaintiff's job performance as a former employee," for example, the test does not apply. *Id.* Public policies supporting the "virulent character test," such as public interest in having officials fulfill their duties (which may require public criticism), are not in play when the speech concerns a private matter. In *Conard*, the retaliatory speech was in the form of false statements by a former public employer to a prospective employer in response to a reference request. *Id.* at 181. That was considered to be a private issue that had no public concern and did not warrant imposing a higher standard for the plaintiff's claim. *Id.* at 183.

Plaintiff argues that this case is just like *Conard* because the School District via the Press Statement was commenting on Plaintiff's job performance, so it concerns a private matter to which the "virulent character" test should not be applied. The School District, on the other hand, argues that this is a matter of public concern because the comments were made at a school board meeting and involved matters of public interest, specifically responding to Plaintiff's earlier comments to news outlets about wrongdoing by the School District and its officials. The Court agrees with the School District.

---

[25] In *McLaughlin*, our Court of Appeals adopted the heightened "virulent character" standard from the Fourth Circuit's decision in *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000):
When a public official is sued for allegedly causing a third party to take some type of adverse action against plaintiff's speech, we have held that defendant's conduct must be of a particularly virulent character. It is not enough that defendant speaks critically of plaintiff or even that defendant directly urges or influences the third party to take adverse action. Rather, defendant must "threaten" or "coerce" the third party to act.
*McLaughlin*, 271 F.3d at 573.

25

Although statements made (by both sides) involve Plaintiff's time as Superintendent of the School District, the statements made by the School District are plainly matters of public concern because they were made in response to Plaintiff's very public allegations against the School District, including her allegations of the School District's official misconduct, wrongdoing, and financial waste. The fact that Plaintiff's job performance was also a major topic does not make the matter a private one in light of the fact that her service as Superintendent (a high public position in a school district) has become the subject of public debate and news coverage, orchestrated in the first instance by Plaintiff herself via her December 1, 2017, public statement accusing School District officials of nefarious conduct. "The interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators." *Bond v. Floyd*, 385 U.S. 116, 136 (1966). As the D.C. Circuit stated, "[i]f the First Amendment were thought to be violated any time a private citizen's speech or writings were criticized by a government official, those officials might be virtually immobilized." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C. Cir. 1991). On top of that, Plaintiff affirmatively pled that her speech was on matters of public concern (Compl. ¶ 42), and the Court has no trouble concluding that the District's response was part of that same transaction of public policy/conduct debates carried out via dueling press statements. Therefore, the *Conard* exception simply does not apply, and Plaintiff's claim for First Amendment retaliation is subject to the "virulent character" test.

The Eastern District of Pennsylvania recently applied the "virulent character" test to a motion to dismiss. In *Noonan v. Kane*, one plaintiff alleged that after he criticized former Pennsylvania Attorney General Kathleen Kane for her investigation into accusations of bribery of state assemblymen, Kane retaliated against him by suggesting that he was a racist. 305 F. Supp. 3d 587, 601 (E.D. Pa. 2018). The district court dismissed that count, concluding that while Kane's

response was "reprehensible" it did not allege a "threat, coercion, or intimidation" and could not rise to a claim of § 1983 retaliation. *Id.* In another count, however, allegations that Kane's subordinates threatened to harm the plaintiffs if they did not stop criticizing Kane's actions "crossed the line from protected First Amendment Speech by Kane to speech threatening harm," and that claim survived Kane's motion to dismiss. *Id.* at 602.

Applying the test to the facts pled here, the Court concludes that this claim fails. The Press Release does not threaten, coerce, or intimidate. It does not suggest that punishment, sanction, or adverse regulatory action will follow. Nor does the Complaint allege as much. The Plaintiff and the School District had settled their differences by resolving Plaintiff's first lawsuit. Plaintiff, by her own admission, then launched a public attack on the School District and its officials, their conduct, and their motives in parting ways with her. That then led directly to the public release of the Press Statement in response, in which the School District denied any such improper conduct, recited the School District's justifications for seeking to dismiss Plaintiff as Superintendent, and set forth the School District's positions as to Plaintiff's discharge of her statutory duties as Superintendent.

In such specific circumstances, the rebuttal contained in the Press Statement is not retaliatory speech capable in these circumstances of supporting a First Amendment retaliation claim, as it makes no threat of future action and thus cannot meet the "virulent character" test. To hold otherwise on the facts pled here would, as the D.C. Circuit noted, immobilize public officials from responding to criticism and would truncate rather than foster the robust debate about governmental action contemplated by the First Amendment.

Therefore, Plaintiff fails to state a claim for First Amendment retaliation against the School District, and the Court's analysis stops here. In light of the content of the School District's Press

27

Statement, the Court concludes that no further facts could be pled in an amended complaint that could save Count IV. Any amendment would therefore be futile, and this claim is dismissed with prejudice.

## IV.    Conclusion

For the foregoing reasons, the Motion to Dismiss filed by Defendants Michael Bartolini, Blairsville-Saltsburg School District, Linda Brown, Beverly Caranese, Holly Hall, Marlene Joyce, ECF No. 19, is granted on the terms set out in the accompanying Order. The Motion to Dismiss filed by Defendant John Cambest, ECF No. 21, is also granted on the terms set out in the accompanying Order.

Mark R. Hornak
Chief United States District Judge

Dated: February 28, 2019.
cc: All counsel of record

28